412 P.2d 240.

STATE of New Mexico, Plaintiff-Appellee,

v.

Lloyd LaRoi MILLER, Defendant-Appellant.

No. 7893.

Supreme Court of New Mexico.

March 14, 1966.

Charles Driscoll, Melvin L. Robins, Albuquerque, for appellant.

Boston E. Witt, Atty. Gen., Roy G. Hill, Asst. Atty. Gen., Santa Fe, for appellee.

CHAVEZ, Justice.

On July 4, 1962, Gloria Monson, a clerk in an Albuquerque, New Mexico, liquor store, was shot and killed in an apparent robbery attempt.

More than two years later, on July 7, 1964, a U. S. Commissioner in Albuquerque issued a warrant for appellant's arrest. An F.B.I. agent, Cary Carlton, had filed a complaint upon which the warrant was issued. The complaint charged that appellant, on or about June 17, 1964, fled the state of New Mexico and traveled in interstate commerce to avoid prosecution in New Mexico for armed robbery, a felony in this state, all in violation of 18 U.S.C. § 1073.

Appellant was arrested in San Diego, California, on July 16, 1964, by F.B.I. agent Thomas Mitchell, acting under the authority of the U. S. Commissioner's warrant. Agent Mitchell took appellant to the San Diego F.B.I. office where a "major case" set of appellant's fingerprints were obtained. The fingerprints were later introduced in evidence at the preliminary hearing and at the trial.

Detective James Bundy of the Albuquerque police department signed a complaint on July 10, 1964, before justice of the peace Flavio Romero of Bernalillo County, New Mexico, charging appellant with the murder of Gloria Monson. Appellant was then returned to Albuquerque to answer the charge.

Appellant was found guilty of murder by a jury and judgment was entered on that verdict. Appellant was sentenced to execution.

Appellant's first contention is that the trial trial court erred when it failed to suppress the evidence concerning the fingerprints which were taken pursuant to the San Diego arrest. Appellant states that they were obtained by the police in the course of an illegal arrest. He contends that the arrest in San Diego was illegal because it was made upon a warrant which

had been issued on a complaint which was insufficient, as it did not show the necessary "probable cause" for appellant's arrest.

Appellant made motions to suppress the fingerprints at the preliminary hearing, before trial and during trial, and all of his motions were denied.

█ It is clear that evidence obtained through an illegal search cannot be introduced in state or federal courts. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed. 2d 1081. Fingerprints are so excluded if they are taken pursuant to an illegal arrest. Bynum v. United States (1958), 104 U.S. App.D.C. 368, 262 F.2d 465; approved in Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441.

Argument in this case focuses upon the constitutional adequacy of the complaint which gave rise to the issuance of the warrant upon which appellant was arrested. The State argues, in an alternative answer to appellant's contention, that agent Mitchell had authority under 18 U.S.C. § 3052, which gives F.B.I. agents authority to make arrests without a warrant, if they have reasonable grounds to believe a person has committed any felony under the laws of the United States.

At the preliminary hearing, agent Mitchell testified:

"A. Well, we had information that a warrant had been issued for Mr. Miller's arrest for unlawfully flee-

ing the State of New Mexico to avoid prosecution for the crime of armed robbery, and we were in the process of trying to locate him and effect his arrest."

Upon cross-examination, agent Mitchell testified that he arrested appellant because there was a federal warrant outstanding for his arrest. The same basis for the arrest was reiterated at the trial.

We find no evidence in the record to sustain the State's contention that agent Mitchell arrested appellant under the provisions of 18 U.S.C. § 3052. Agent Mitchell's testimony indicates his positive reliance on the federal arrest warrant which had been issued. It is, therefore, necessary that we examine the complaint upon which that warrant was issued and determine if it was sufficient

The first case, in a series of cases which have outlined the requirements of a sufficient complaint, is Giordenello v. United States, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed. 2d 1503. In that case the court stressed the importance of having the judicial officer exercise an independent judgment concerning the reasonableness of making an arrest. The court stated that the officer issuing an arrest warrant must be supplied with facts upon which he can "assess independently the probability that petitioner [appellant] committed the crime charged." The complaint in that case charged sub-

stantially the language of the statute and nothing more. The court held that, since the necessary facts did not appear in the complaint, the arrest was illegal, and the narcotics seized in the illegal arrest should not have been admitted into evidence.

The reason for requiring sufficient facts in the complaint leading to the issuance of an arrest warrant was clearly stated in a later case, Wong Sun v. United States, supra, when it said (83 S.Ct. 407, 414):

"* * * The arrest warrant procedure serves to insure that the deliberate, impartial judgment of a judicial officer will be interposed between the citizen and the police, to assess the weight and credibility of the information which the complaining officer adduces as probable cause. * * *"

In the four cases cited below, the court was deciding cases which involved the sufficiency of the complaint upon which search warrants were issued. We feel that what the court said in those cases is applicable to complaints leading to the issuance of arrest warrants as well. Aguilar v. State of Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed. 2d 723.

The court recognized that hearsay evidence could be relied upon to find the necessary "probable cause" in Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed. 2d 697. But the court noted that the complaint must present facts to the judicial officer which give credibility to the hearsay evidence.

An example of an adequate complaint, based on hearsay evidence, is given in Rugendorf v. United States, 376 U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d 887. The complaint detailed the crime which had occurred, showed the unique nature of the items stolen, related the reliability of certain informers and the information which they had given to complainant, and cited other information linking defendant's market to the stolen property.

But in Aguilar v. State of Texas, supra, the court examined another complaint based on hearsay evidence and found it insufficient. In that case two Houston police officers stated that they had received reliable information from a credible person and, therefore, believed that narcotic drugs were being kept in a particular place for unlawful sale. The court held that the complaint failed to show the underlying circumstances from which the police officers concluded that the informant was credible, or that his information was "reliable," nor did it show how the informer concluded that the narcotics were where they claimed they were.

The recent case of United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed. 2d 684, indicates that the concepts related in the cases cited above are still the law.

The complaint in the instant case recites:

"The undersigned complainant [Cary Carlton, Special Agent, F.B.I.] being duly sworn states: That on or about 17 June, 1964, at Albuquerque, in the District of New Mexico, LLOYD LaROI MILLER did flee the State of NEW MEXICO and travel in interstate commerce to avoid prosecution in the Second Judicial District of New Mexico for the crime of Armed Robbery, a felony under the laws of the State of New Mexico. And the complainant states that this complaint is based on information received from Detective James Bundy of the Albuquerque Police Department that the defendant had fled the State of New Mexico."

The complaint charges violation of 18 U.S.C. § 1073, which reads, in part:

"Whoever moves or travels in interstate * * * commerce with intent * * * to avoid prosecution, * * * under the laws of the place from which he flees, for a crime, * * * which is a felony under the laws of the place from which the fugitive flees, * * * shall be fined not more than $5,000 or imprisoned not more than five years, or both."

Two elements appear clear: (1) Interstate travel; and (2) intent to avoid prosecution under the laws of the state from which one flees for a felony in that state. The first element is an entirely legal act which becomes criminal only when combined with the intent of the second element. Lupino v. United States, (8 CCA 1959), 268 F.2d 799.

It is clear that formal prosecution need not have commenced at the time of the interstate travel. United States v. Bando, (2 CCA 1957), 244 F.2d 833; Lupino v. United States, supra. It is equally clear that mere absence from a state after commission of a crime does not show the necessary intent provided by the law. Reis v. United States Marshal, (E.D.Pa.1961), 192 F.Supp. 79. And when specific intent is an element of the crime charged, the complaint seeking an arrest warrant must indicate facts which show "probable cause" to believe the required intent was present. Pugach v. Klein, (S.D.N.Y.1961), 193 F.Supp. 630.

The complaint before us does not show any facts indicating the commission of a particular armed robbery, or that appellant was in New Mexico, or that appellant left New Mexico. Neither does it state facts which show that appellant left New Mexico with knowledge of possible prosecution or an intent to avoid that prosecution.

The complaint is deficient in another respect. It is based on the conclusory statement of another police officer. It does not show how the informing officer concluded that appellant had committed the crime charged. Aguilar v. State of Texas, supra, required that the complaint show the under-

lying circumstances from which the informant made his conclusions. In Aguilar the court pointed to a situation similar to the one in the instant case, and said that if the underlying circumstances leading to the informant's conclusion were not contained in the complaint, a police officer who arrived at a "mere conclusion" and could not obtain a search warrant, could circumvent prior United States Supreme Court decisions by conveying that conclusion to another officer who could obtain the warrant by swearing that he had received reliable information from a credible person. Although that case involved the issuance of a search warrant, we feel that what was said in that case is applicable here. Detective Bundy could not have obtained an arrest warrant on his conclusory statement alone, and it is not reasonable to allow a warrant to issue because detective Bundy related the conclusion to agent Carlton.

We hold that the complaint, upon which the warrant was based and which led to appellant's arrest in San Diego, was deficient and the resulting arrest was, therefore, illegal. The fingerprints obtained in the course of that illegal arrest should have been suppressed.

The State also answers appellant's first contention by saying, since agent Mitchell had notice of the outstanding warrant, that he had "probable cause" upon which he could make the arrest, whether or not the warrant was defective. Such a holding would mean that the views of the United States Supreme Court, expressed in the cases cited above, could be evaded simply by obtaining warrants on insufficient complaints, and then circulating notices of the warrants so that other police officers could gain "probable cause" to make an arrest. The fallacy of such a holding shows on its face.

Appellant asks that he be granted a new preliminary hearing because the illegally seized fingerprints were introduced. He cites no authority for such a sanction. We feel that because considerable other testimony, which supported the decision to hold appellant for trial, was introduced at the preliminary hearing, that appellant's rights are sufficiently guarded by requiring that he be granted a new trial at which the illegally obtained fingerprints are excluded.

Appellant also contends that the trial court erred when it denied his motion for a mis-trial, due to the prosecutor's comments on the fact that appellant exercised his right not to testify.

In Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653, the United States Supreme Court held that the Fifth Amendment privilege against self-incrimination was applicable to the states through the Fourteenth Amendment. However, since appellant's trial in the instant case, the Supreme Court decided Griffin v. State

of California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106. In that case the defendant did not testify at the trial on the issue of guilt. The trial court instructed the jury that defendant had a constitutional right not to testify and, on the basis of Art. I, § 13, of the California Constitution, instructed the jury:

> " 'As to any evidence or facts against him which the defendant can reasonably be expected to deny or explain because of facts within his knowledge, if he does not testify or if, though he does testify, he fails to deny or explain such evidence, the jury may take that failure into consideration as tending to indicate the truth of such evidence and as indicating that among the inferences that may be reasonably drawn therefrom those unfavorable to the defendant are the more probable.' "

In commenting on defendant's failure to testify, the prosecutor said:

> " 'The defendant certainly knows whether Essie Mae had this beat up appearance at the time he left her apartment and went down the alley with her.

> " 'What kind of a man is it that would want to have sex with a woman that beat up if she was beat up at the time he left?

> " 'He would know that. He would know how she got down the alley. He would know how the blood got on the bottom of the concrete steps. He would know how long he was with her in that box. He would know how her wig got off. He would know whether he beat her or mistreated her. He would know whether he walked away from that place cool as a cucumber when he saw Mr. Villasenor because he was conscious of his own guilt and wanted to get away from that damaged or injured woman.

> " 'These things he has not seen fit to take the stand and deny or explain.

> " 'And in the whole world, if anybody would know, this defendant would know.

> " 'Essie Mae is dead, she can't tell you her side of the story. The defendant won't.' "

Section 41–12–19, N.M.S.A., 1953 Comp., provides:

> "In the trial of all indictments, informations, complaints and other proceedings against persons charged with the commission of crimes, offenses, and misdemeanors in the courts of this state, the person so charged shall, at his own request but not otherwise, be a competent witness. His failure to testify shall create no presumption against him, but may be the subject of comment or argument. In trials in the district court such comment or argument shall be within the discretionary control of the court, and shall entitle the accused to an instruction that the jury shall indulge no presumption

against the accused because of his failure to testify."

In the instant case, the prosecutor made the following comments:

"He's told you that I skillfully presented the evidence in this case, which is very flattering, and I would like to be able to return the compliment, but Mr. Driscoll, I remind you, has not presented any evidence in this case.

\* \* \*

"Now, I admit, nobody knows exactly what happened in the liquor store on that night. I told you what I felt had happened, what I thought had happened. There's only two people that actually know what happened in the liquor store that night. One of those persons is dead, that's Miss Monson. The other person, according to the evidence, is Lloyd Miller, and Lloyd Miller hasn't told us what happened that night."

Appellee points out that Griffin v. State of California, supra, was decided under facts which disclosed that both the prosecutor and the court referred to defendant's failure to testify, and calls attention to the court's statement:

"\* \* \* What the jury may infer, given no help from the court, is one thing. What it may infer when the court solemnizes the silence of the accused into evidence against him is quite another. \* \* \*"

While it is true in this case that the trial court gave no instruction comparable to that in Griffin v. State of California, supra, the closing statement by the Supreme Court in Griffin puts this contention at rest. It said:

"\* \* \* and hold that the Fifth Amendment, in its direct application to the Federal Government, and in its bearing on the States by reason of the Fourteenth Amendment, forbids *either* comment by the prosecution on the accused's silence *or* instructions by the court that such silence is evidence of guilt." (Emphasis supplied.)

The fact that comment by either court or prosecutor on the defendant's failure to testify is a denial of a constitutional right is again clearly stated in the opening statements of Tehan v. United States, 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453 (Jan. 19, 1966).

It is also worthy to note that, while the California constitutional provision creates a presumption of evidence, the New Mexico statute expressly denies any presumption. We again quote from Griffin v. State of California, supra, wherein the following appears:

"\* \* \* It is in substance a rule of evidence that allows the State the privilege of tendering to the jury for its consideration the failure of the accused to testify. \* \* \*"

▇ The New Mexico statute is one which basically concerns the competency of the accused as a witness. While it is clear that it is not a rule of evidence, we also think it clear that the statute "allows the State the privilege of tendering to the jury" the fact that the accused failed to testify. It does not tender it with the formality of evidence, but it allows the fact to be presented. We are of the opinion that the corrective instruction directed by our statute does not sufficiently remove the impression created by the prosecutor's comments from the minds of the jury, and in fact may magnify any impression. Thus, that portion of § 41–12–19, supra, which permits, within the discretion of the court, comment or argument concerning the accused's failure to testify does not comply with the principles set forth in Griffin v. State of California, supra, and is, therefore, unconstitutional. (The validity of the remainder of § 41–12–19, supra, is not before us and we decline to consider its possible continued validity under the doctrine noted in Bradbury & Stamm Const. Co. v. Bureau of Revenue, 70 N.M. 226, 372 P.2d 808.) It is also clear that anything said in State v. Sandoval, 59 N.M. 85, 279 P.2d 850, which is contrary to what we say here is overruled.

Our conclusion in this case appears to be additionally confirmed by the fact that in Tehan v. United States, supra, the Court refers to New Mexico on two occasions as one of the states affected by the decision in Griffin v. State of California, supra.

▇ Appellee also contends that the comments made by the prosecutor in the instant case were not as strong as those made in Griffin v. State of California, supra. While we might think this true, we cannot escape the closing sentence of that opinion. The Court said the Fifth and Fourteenth Amendments "* * * forbid[s] * * * comment by the prosecution on the accused's silence * * *." We take this to mean any comment, not just comment comparable to that in the matter before the Supreme Court at that time.

▇ Although the instant case was tried before the decision in Griffin v. State of California, supra, and that decision has prospective application only, Tehan v. United States, supra, the latter decision, clearly indicates that the Griffin case is applicable to cases such as this one which were pending on direct appeal at the time that the decision in Griffin v. State of California, supra, was announced.

We therefore find that the trial court erred when it denied appellant's motion for a mis-trial because the prosecutor commented on appellant's exercise of his constitutional right to remain silent.

Appellant further contends that the trial court erred in admitting certain physical evidence, some testimony, and a semi-nude picture of the victim, and states that pre-

trial publicity prevented a fair trial. We decline to decide them as it is not necessary to do so in properly disposing of the present case.

The case is remanded to the trial court with direction to grant appellant a new trial, consistent with the views herein expressed.

It is so ordered.

CARMODY, C. J., and NOBLE, MOISE, and COMPTON, JJ., concur.