460 P.2d 244

STATE of New Mexico, Plaintiff-Appellee,

v.

Carmen FERRARI, Defendant-Appellant.

No. 8636.

Supreme Court of New Mexico.

Nov. 3, 1969.

Charles Driscoll, Albuquerque, for defendant-appellant.

James A. Maloney, Atty. Gen., David R. Sierra, Larry N. Smith, Spencer T. King, Asst. Attys. Gen., Santa Fe, for plaintiff-appellee.

PER CURIAM:

Upon consideration of appellant's motion for rehearing, the original opinion is withdrawn and the following substituted therefor.

**716**

## OPINION

COMPTON, Justice.

Defendant was convicted of first degree murder and from the judgment imposing sentence, he appeals. The basis for the appeal is that the court committed prejudicial error in admitting evidence obtained by eavesdropping, in admitting evidence based upon an illegal search warrant, in admitting post-arrest statements, and, further, the lack of substantial evidence of a deliberate intent to kill.

The appellant Ferrari, the deceased Joseph Swain, and Lorraine Yanuzzi, were involved in an odd triangular association, apparently centering around Lorraine. This association began sometime in 1965, and in March, 1966, Ferrari and Lorraine leased the "Wigwam," a tourist shop in Gallup. Lorraine ran the business, and she and Swain lived together in a room over the shop. Ferrari was aware of Lorraine's relationship with Swain, and was a frequent visitor at the Wigwam. Lorraine, who was 22 years of age, often visited Ferrari in his home in the evenings. Swain was likewise aware of Ferrari's relationship with Lorraine.

On June 15, 1966, Ferrari, Swain, Lorraine, an itinerant named Fred James, and an Indian boy, Tommy Benito, were at the Wigwam. Swain, James, and Benito were drinking. Swain was belligerent toward Lorraine and repeatedly fired a .38 caliber pistol at or near her. James also had a .32 caliber automatic pistol. Late in the evening on that day, Ferrari took Lorraine to his home, left her there, and returned to the Wigwam. Ferrari then took Benito to downtown Gallup, thus leaving Swain and James at the Wigwam. Swain was apparently shot and killed at the Wigwam either late on June 15th or in the early morning hours of June 16th. After leaving Benito downtown, Ferrari returned alone to the Wigwam. When Lorraine returned with Ferrari to the Wigwam sometime after midnight, neither Swain nor James was there. Ferrari told her that both Swain and James had left.

On June 19, 1966, an unidentified body was found buried in a pile of coal dust near an abandoned mine west of Gallup. The deceased had been shot in the head with a .32 caliber bullet. The body was later tentatively identified as Swain at a mortuary by Gallup Policeman Sanchez through distinctive tattoo marks. The Federal Bureau of Investigation confirmed the identity of Swain through fingerprints. Blood was found on the mattress and carpet in the overhead bedroom at the Wigwam.

The record shows that Ferrari, after Swain's body had been found but while Ferrari was still at liberty, had planned to visit Lorraine at the Wigwam on a Sunday evening after the shop had closed. Sheriff Bass was informed of this proposed visit and, with Lorraine's consent, hid in the Wigwam to hear the conversation between them, and we quote the evidence given by Sheriff Bass, as to what he heard Ferrari say to Lorraine:

"A. He said, 'I did it for you, baby. I did it for you.'

"Q. How many times did he say that?

"A. Oh, he repeated it six or seven times.

"Q. Now, what else was said?

"A. And he says, 'I thought you wanted me to, baby. Just do what I ask you to do and we will be all right. Just tell them the hitchhiker forced us to do it.' "

■ ■ Appellant's first point for reversal is that the trial court erred in denying his motion to suppress the above eavesdropping testimony. There was no error in this regard. It is clear that Sheriff Bass was on the premises by permission of Lorraine, the colessee. Since the eavesdropping in this case occurred without any unlawful intrusion of a constitutionally protected area of appellant, State v. Kennedy, 80 N.M. 152, 452 P.2d 486; People v. Silva, 140 Cal.App.2d 791, 295 P.2d 942; United States v. Sferas, 210 F.2d 69 (7th Cir. 1954), its fruits were not inadmissible under the exclusionary rule of the Fourth

and Fourteenth Amendments. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed. 2d 1081. The appellant relies on Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576. The case does not support appellant's position. The eavesdropping here occurred prior to Katz and Katz was held to operate prospectively. Desist v. United States, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248.

We fail to see the claimed invalidity of the search warrant under the Fourth Amendment to the Constitution of the United States as argued by appellant under his second point. The following facts are stated in the affidavits on which the search warrant is based, that a man tentatively identified as Joseph Swain had been killed and buried in a coal slag pile west of Gallup and the body was in a decaying state and had an extremely foul odor; that a relationship and association existed between Lorraine Yanuzzi, Carmen Ferrari and Joseph Swain, and that fact was known to officer Sanchez, the affiant; that Carmen Ferrari, Lorraine, and some third unknown person were seen by the affiant and officer Montano in Carmen Ferrari's pawn shop at an unusual hour a few days before the body was found; and that officer Sanchez while attempting to make an identification of the body noticed the bad odor, and while investigating a suspected burglary of Ferrari's car, he noticed a strong odor in the trunk of the car which reminded him of the odor of the body at the mortuary and, further, he noticed a reddish stain on the floor of the trunk.

█ We conclude that the search warrant was amply supported by a showing of probable cause. The authorities support this contention. Compare State v. Miller, 76 N.M. 62, 412 P.2d 240; United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684; Rugendorf v. United States, 376 U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d 887; Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327; United States ex rel. Gonzales v. Follette, 397 F.2d 232 (2d Cir. 1968); United States v. Van Horn, 396 F.2d 505 (4th Cir. 1968); Schutz v. United States, 395 F.2d 225 (10th Cir. 1968); United States v. Soyka, 394 F.2d 443 (2d Cir. 1968) (on rehearing en banc); United States v. One 1965 Buick, 392 F.2d 672 (6th Cir. 1968); United States v. Lewis, 392 F.2d 377 (2d Cir. 1968); United States v. Scolnick, 392 F.2d 320 (2d Cir. 1968); United States v. Gillette, 383 F.2d 843 (2d Cir. 1967); Armada v. United States, 319 F.2d 793 (5th Cir. 1963); Lee Art Theatre v. Virginia, 392 U.S. 636, 88 S.Ct. 2103, 20 L.Ed.2d 1313; Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441; United States v. Roth, 391 F.2d 507 (7th Cir. 1968); United States v. Mirallegro, 387 F.2d 895 (7th Cir. 1967); United States ex rel. Rogers v. Warden of Attica State Prison, 381 F.2d 209 (2d Cir. 1967); United States v. Menser, 360 F.2d 199 (2d Cir. 1966); State v. Brochu, 237 A. 2d 418 (Me.1968).

The contention that the search warrant was the fruit of a prior illegal search is without merit. Officer Sanchez was on his usual early morning patrol in Gallup shortly after the body had been found and, while thus engaged, he noticed a car parked in the driveway adjacent to appellant's home, with the trunk open. He stopped and approached the vehicle suspecting that the vehicle had been burglarized. He recognized this car as belonging to Carmen Ferrari. While checking the trunk he detected the odor and reddish stains which are the subject of the search warrant. Officer DeArmand confirmed that the odor was present in the trunk and attempted unsuccessfully to scrape off some of the stain. Officer Sanchez then contacted Ferrari to advise him that the trunk of his car was open and to learn whether the car had been burglarized. Ferrari advised Sanchez that he had left the trunk open. Sanchez stated that he was led to look into the trunk of the car because he suspected that the car had been burglarized. This suspicion was predicated on the fact that the trunk of the car was open at an unusual hour and under unusual

circumstances. See Terry v. Ohio, 392 U. S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889.

 The appellant complains that the warrant itself was constitutionally defective because it was a general warrant authorizing a search for any item in five separate places relating to the death of an unknown individual whose body had been found at described location, and for specific items completely unrelated to any statement of fact in the affidavits. This contention must be rejected. A description in a warrant which does. not name items seized but includes instruments of the crime is not so vague as to invalidate the search warrant. United States v. Robinson, 287 F.Supp. 245 (N.D.Ind.1968). Likewise, any item relating to the death is not so vague as to render the warrant invalid. State v. Seefeldt, 51 N.J. 472, 242 A.2d 322. There is no requirement that prevents a single search warrant from issuing for more than one building or place as long as the various places and things are specifically described and there exists adequate probable cause for search of each place. United States v. Hinton, 219 F.2d 324 (7th Cir. 1955). A showing of probable cause that one has committed murder ordinarily is enough to justify the search of his house and the surrounding area and his business as it may be reasonably inferred that evidence of the crime may be located on those premises. State v. Seefeldt, supra.

 The appellant complains that there was no fact in the affidavit which would authorize the search for a .30 or .32 caliber automatic pistol as directed by the search warrant. In this respect the sheriff's return did not disclose the finding of the type of gun described. The search warrant being otherwise valid, reference to the described pistols will be treated as mere surplusage. Salmon v. State, 2 Md.App. 513, 235 A.2d 758. The search warrant was not constitutionally defective.

The appellant next complains of error in the admission into evidence of post-arrest statements of the accused. These statements were introduced through the undersheriff Wilson, who testified as follows:

"Q. Were you present when the defendant, Ferrari, was arrested?

"A. Yes, sir.

"Q. Who took part in the arrest?

"A. Mr. Bass arrested him. Mr. Lopez was there, and I was also there.

"Q. Now, where was the arrest made?

"A. Wigwam, east of town.

"Q. And, after the defendant was arrested, what happened?

"A. He got in the back seat with me. Mr. Bass was driving, and Mr. Lopez was in the front seat.

"Q. Did anyone at any time after the arrest interview him or try to take a statement from him on the way back into town?

"A. He volunteered a statement after we left there.

"Q. And what did he say?

"A. He said, 'I'm innocent. I'm innocent. I did not kill him. I did not kill him.'

"Q. And what else did he say?

"A. I says, 'Who killed him?' He said, 'The hitchhiker.' He says, 'He made me help him.'

"Q. What else did he say, and you may refer to any notes that you made to refresh your recollection?

"A. He says, 'Sure they used my car.' He says, 'They used my car.' I says, 'Who buried him?' He says, 'I and the hitchhiker and Lorraine drove the car.' He says, 'He killed him on the fifteenth just before midnight.' 'We buried him on the sixteenth about two a. m. We stopped at the Paramount Cafe coming back. The manager, the boss of the cafe was there.' He says, 'He shot him with a thirty-two automatic.'

"Q. Now, for the record, I want to make doubly sure that nobody

asked him any questions, is that correct?

"A. He volunteered this information when he left."

The admission into evidence of volunteered statements is not prohibited by the Fifth and Fourteenth Amendments. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694; Parson v. United States, 387 F.2d 944 (10th Cir. 1968). The arresting officer was not questioning the appellant about the crime when he commenced the conversation leading to the questions here objected to. Miranda v. Arizona, supra, does not prohibit every inquiry in response to volunteered statements where the arresting officer does not initiate the conversation. See Davidson v. United States, 371 F.2d 994 (10th Cir. 1966); Stone v. United States, 385 F.2d 713 (10th Cir. 1967). See also State v. Sneed, 78 N.M. 615, 435 P.2d 768; State v. Fagan, 78 N.M. 618, 435 P.2d 771 (Ct.App.). While there is no question that when the statements attributed to defendant and testified to by the deputy sheriff were made, defendant was in custody. We do not consider that in the circumstances here present the statement was not admissible under the holding in Miranda, supra, or in Orozco v. Texas, 394 U.S. 324, 89 S. Ct. 1095, 22 L.Ed.2d 311. In Miranda, supra, the Supreme Court of the United States detailed the inquiries and admonitions required to be made to a person in custody before he is "subjected to questioning." It went further and described in detail the reasons for its pronouncement and the evils sought to be overcome. In the case of Gaudio v. State, 1 Md.App. 455, 230 A.2d 700, the Maryland Court of Special Appeals discusses the rationale of Miranda in depth and concludes that not every statement by a defendant during a custodial inquiry or questioning is inadmissible if the cautionary advice has not been given. A very recent case arriving at the same conclusion is State v. Barnes, 54 N.J. 1, 252 A.2d 398. See also Campbell v. State, 4 Md.App. 448, 243 A.2d 642. State v. Word, 80 N.M. 377, 456 P.2d 210 (Ct.

App., decided June 13, 1969); Graham, "What is 'Custodial Interrogation?': California's Anticipatory Application of Miranda v. Arizona," 14 U.C.L.A.L.Rev. 59. We do not see in the facts of this case either a "subjecting" to questioning, or an "interrogating" as those terms are used and explained in Miranda and Orozco. It is clear the officer's questions were not a type designed to elicit incriminating responses, nor were they likely to have that effect considering the entire context in which they were asked.

Appellant further contends that Ferrari's statement above quoted should have been suppressed on the additional grounds that Ferrari's arrest was illegal because the sheriff's affidavit upon which the warrant of arrest was issued was inadequate. Wong Sun v. United States, supra, and State v. Miller, supra. The sheriff's affidavit recited the discovery of the body in the coal pile, the autopsy revealing the gun shot wound, the human blood on materials secured from Ferrari's home as well as from his automobile, and the fact that Ferrari's automobile trunk revealed particles of coal with no significant difference from those items taken from the coal pile. In Wong Sun, supra, the Supreme Court of the United States stated that the probable cause for the warrant should be evidence which would warrant a man of reasonable caution in the belief that a felony had been committed, and that the defendant had committed it. In Miller, supra, we held that this could not be based on the conclusory statement of another police officer. Here we believe that the affidavit of Sheriff Bass complied with the rule. Arrests based upon such evidence will hardly "leave law-abiding citizens at the mercy of the officers' whim or caprice. Brinegar v. United States, 338 U.S. 160, 176." It would "insure the deliberate impartial judgment of the judicial officer" who issues the warrant as we quoted from the Wong Sun case in Miller, supra.

With regard to the appellant's deliberate intent to kill Swain, it is conclu-

·sively· ·established that the essential elements. of murder in the first degree may be established by circumstantial evidence. ·State v. Smith, 76 N.M. 477, 416 P.2d 146; ·State ·v. Ybarra, 24 N.M. 413, 174 P. 212. In·addition to the evidence related, there is ·evidence that in December, 1965, the appellant gave Lorraine a bottle of rat poison and told her to pour it into Swain's coffee. There is evidence that in May, previous to the murder, appellant was wanting to purchase a silencer that would fit a .38 caliber pistol owned by him. We conclude that the essential elements of murder in the ·first degree are substantially supported by the evidence.

The judgment should be affirmed.

It is so ordered.

NOBLE, C. J., and MOISE, TACKETT and WATSON, JJ., concur.