STATE of Iowa, Appellee,

v.

Steven Eugene GLEASON, Appellant.

No. 87–1490.

Supreme Court of Iowa.

Nov. 23, 1988.

Raymond E. Rogers, Acting Appellate Defender, and Barbara M. Anderson, Asst. Appellate Defender, for appellant.

Thomas J. Miller, Atty. Gen., Sheryl A. Soich, Asst. Atty. Gen., James M. Metcalf, Co. Atty., and Scott Lemke, Asst. Co. Atty., for appellee.

PER CURIAM.

This appeal by defendant, Steven Eugene Gleason, of his conviction of unlawful flight to avoid prosecution for the crime of second-degree theft raises two issues: (1) whether the State was required to prove, as an element of the offense, that a prosecution had commenced before Gleason fled Iowa, and (2) whether the trial court erred in its jury instructions on the elements of the offense and the definition of "prosecution." We affirm.

In January 1986 Patricia Schuler, who was living with Gleason, reported to the Waterloo, Iowa police that he had assaulted her and that he had been involved in a number of recent thefts. The police then obtained a search warrant for Gleason's residence, but before they could execute it on January 10, they received a call from Gleason. In the course of this conversation, Gleason was advised the search warrant had been issued and was requested to meet the officers at his residence so it could be served on him. He agreed to meet them there. When Gleason had not arrived at the residence within an hour, the officers served the search warrant on his father, who owned the house. While the officers were conducting the search, Gleason telephoned the residence. He was again requested to meet the officers there, but he declined to do so, stating he would come to the police station the next day, a Saturday. The officers then informed him he should wait until the beginning of the next week, as the investigating officers would not be in on the weekend.

Saturday morning, January 11, 1986, Gleason telephoned the police station to ascertain whether a warrant had been issued for his arrest. He was informed a warrant had not yet been issued, but that he would probably be arrested when he came to the police station. Gleason then indicated he would wait until Monday morning to turn himself in, since he did not want to spend the weekend in jail. In

truth, Gleason left for Colorado that week-end. A warrant for his arrest was ultimately issued on January 29, 1986. Gleason was apprehended in Arvada, Colorado on May 17, 1986.

Gleason was thereafter convicted of violating Iowa Code section 719.4(4) (1985), which provides:

A person who flees from the state to avoid prosecution for a public offense which is a felony or aggravated misdemeanor commits a class "D" felony.

Gleason, noting chapter 719 does not provide a definition for the term "prosecution," asserts the general definition found in section 801.4(12) applies. This section provides:

*"Prosecution"* means the commencement, including the filing of a complaint, and continuance of a criminal proceeding, and pursuit of that proceeding to final judgment on behalf of the state or other political subdivision.

Iowa Code § 801.4(12) (1985). It is Gleason's contention that application of this definition to section 719.4(4) requires the State to prove, as an element of unlawful flight to avoid prosecution, that a prosecution of the underlying offense had commenced by the time the defendant left Iowa.

Our ultimate goal in interpreting statutory language is to ascertain and give effect to the intention of the legislature. *State v. Whetstine,* 315 N.W.2d 758, 760 (Iowa 1982); *State v. Conner,* 292 N.W.2d 682, 684 (Iowa 1980). When construing a statute, we look to the object to be accomplished, the evils sought to be remedied, or the purpose to be subserved, and place on it a reasonable construction which will best effect its purpose rather than one which will defeat it. *State v. Foster,* 356 N.W.2d 548, 550 (Iowa 1984). In doing so, when the statute is penal, we resolve doubts in favor of the accused. *State v. Burtlow,* 299 N.W.2d 665, 669 (Iowa 1980); *State v. Davis,* 271 N.W.2d 693, 695 (Iowa 1978).

■ Although we agree the definition of "prosecution" in section 801.4(12) applies to section 719.4(4), we are not persuaded its application has the effect Gleason suggests. In our view, it is quite possible to

avoid "the commencement ... and continuance of a criminal proceeding" (to use the language of section 801.4(12)) before the filing of a criminal complaint. *See* Yeager and Carlson, 4 *Iowa Practice: Criminal Law and Procedure,* § 429 at 110 (1979) (section 719.4(4) "is concerned with the activities of persons who may not have been charged with an offense"). *But see* Dunahoo, *The New Iowa Criminal Code: Part II,* 29 Drake L.Rev. 491, 610 (1979–80) (strict interpretation of section 719.4(4) in light of section 801.4(12) "means that a person who commits a felony or an aggravated misdemeanor will not violate this section if he flees *before* commencement of the prosecution against him"). Gleason's contention to the contrary appears to ignore the context in which the term "prosecution" is employed in section 719.4(4).

The words used in a statute should be given their ordinary meaning, absent a legislative definition or a particular and appropriate meaning in law. *State v. Bessenecker,* 404 N.W.2d 134, 136 (Iowa 1987); *State v. Bartusek,* 383 N.W.2d 582, 583 (Iowa 1986). The statute prohibits an otherwise lawful act, leaving the state, when that act is performed for an unlawful purpose, to avoid prosecution. *See State v. Miller,* 76 N.M. 62, 66–67, 412 P.2d 240, 243 (1966) (under federal unlawful flight statute entirely legal interstate travel only becomes criminal when combined with intent to avoid prosecution). The common, ordinary meaning of the words "to avoid," when used in this manner, is "to prevent the occurrence or effectiveness of." *Webster's Third New International Dictionary* 151 (1971); *see also American Heritage Dictionary* 145 (2d College ed. 1982) ("to keep away from" or "to keep from happening"). Thus, one form of unlawful flight would be that which was to prevent even the occurrence of prosecution. By definition, this type of flight would occur in the absence of any previously filed criminal complaint.

Identical language in the federal unlawful flight statute has been similarly construed: "The words 'to avoid prosecution' mean 'to avoid being prosecuted.' The statute does not say 'to avoid *a pending*

prosecution.'" *United States v. Bando*, 244 F.2d 833, 843 (2d Cir.1957). Thus, the scope of the federal statute is not limited to cases where the offender's crossing of the state border is delayed until after the offended state has commenced a prosecution. *Lupino v. United States*, 268 F.2d 799, 801 (8th Cir.1959); *Bando*, 244 F.2d at 843; *Miller*, 76 N.M. at 66–67, 412 P.2d at 243.

We conclude the reasonable interpretation of section 719.4(4) is that it does not require the State to prove a prosecution had commenced before the defendant fled Iowa. Adoption of Gleason's contrary interpretation would allow the validity of an unlawful flight charge to depend on whether the prosecutor could race to the courthouse to file a formal complaint faster than the accused could exit the state with knowledge of its filing. The main purpose of section 719.4(4) is to encourage the accused to remain in the state by exacting a penalty for leaving to avoid prosecution. Clearly this purpose would be thwarted by an interpretation which actually provided an incentive to flee as soon as possible. In accordance with our interpretation of section 719.-4(4), we also conclude the trial court's jury instruction on the elements of the offense was correct.

A final issue is whether the court committed reversible error in its jury instruction on the definition of "prosecution."

This instruction stated:

"Prosecution" means the commencement of a criminal proceeding including the filing of a formal complaint (a statement in writing under oath or affirmation, made before a magistrate or other appropriate authority of the commission of a public offense and accusing someone thereof).

For purposes of this charge of Unlawful Flight to Avoid Prosecution a prosecution is initiated by the targeting of an individual by law enforcement authorities with the intent to file criminal charges.

Gleason notes that the first paragraph of this instruction tracks the language of section 801.4(12), but that the second paragraph appears to define "prosecution" as encompassing police investigative func-

tions. He contends this second paragraph was erroneous because it misstated the law and contradicted the first paragraph.

The submission of contradictory instructions to the jury constitutes error, as there is no way to tell which of the instructions the jury followed. *State v. Watts*, 244 N.W.2d 586, 588–89 (Iowa 1976); *State v. Osmundson*, 241 N.W.2d 892, 893 (Iowa 1976). However, error in instructing the jury does not necessitate reversal unless it is prejudicial. *State v. Gansz*, 376 N.W.2d 887, 891 (Iowa 1985); *State v. Seiler*, 342 N.W.2d 264, 268 (Iowa 1983). When error is not of constitutional magnitude, the test of prejudice is whether it sufficiently appears that the rights of the defendant have been injuriously affected or that the defendant has suffered a miscarriage of justice. *Gansz*, 376 N.W.2d at 891; *State v. Massey*, 275 N.W.2d 436, 439 (Iowa 1979).

■ Although we are inclined to agree with Gleason's assertion the trial court submitted an incorrect definition of when a prosecution is initiated, we need not decide the question. If the court erred by not confining its discussion of "prosecution" to the definition found in section 801.4(12), such error was harmless in this case.

As we have already stated, the jury did not need to find a prosecution had commenced in order to convict Gleason of unlawful flight. Whether the theft prosecution commenced with the filing of a formal complaint or with the targeting of Gleason by the police with intent to file charges was not material to Gleason's guilt or innocence of unlawful flight. Any jury confusion on this score would not have prejudiced Gleason's case.

AFFIRMED.

All Justices concur except SNELL, NEUMAN and ANDREASEN, JJ., who dissent.

SNELL, Justice (dissenting).

I respectfully dissent. The majority quotes with approval our law that doubt in construing a penal statute is resolved in favor of the accused. *State v. Burtlow*, 299 N.W.2d 665, 669 (Iowa 1980); *State v.*

*Davis,* 271 N.W.2d 693, 695 (Iowa 1978). But in applying the law it gainsays the guiding principle.

Doubt as to the meaning of this penal statute abounds. Section 719.4(4) makes it a criminal offense to avoid prosecution. Yet the meaning of prosecution is not defined. Respected commentators on criminal law disagree as to how and when the crime is committed under the statute. *Compare* Yeager and Carlson, 4 *Iowa Practice: Criminal Law and Procedure,* § 429 at 110 (1979) *with* Dunahoo, *The New Iowa Criminal Code: Part II,* 29 Drake L.Rev. 491, 610 (1979–80). How then may an ordinary citizen know what this law means?

The majority accepts defendant's argument that since no definition of "prosecution" is supplied by section 719.4(4) we may learn its meaning from section 801.4(12). But analysis is then looped by the majority's next step. It reasons that it matters not whether we apply the definition in section 801.4(12) as to what a prosecution is, since if a defendant is trying to avoid it, the crime is committed. Doubt compounded is reborn.

The majority's interpretation blurs any meaningful distinction between the prosecutorial and investigative functions of government. We have assiduously maintained this distinction in law. *See Burr v. City of Cedar Rapids,* 286 N.W.2d 393 (Iowa 1979) (regarding a prosecutor's immunity from civil liability). With this interpretation of section 719.4(4) the crime may be committed without a prosecution ever having commenced. It is enough to establish the offense if an investigation is commenced combined with evidence that the defendant had knowledge of it and a possible prosecution.

The broad sweep of the majority's decision is foretold by the district court's amplification of the "prosecution" definition in section 801.4(12). The focus of the statute under the court's instruction is on "targeting an individual by law enforcement authorities with the intent to file criminal charges." This instruction thereby injects an element of subjective intent, undefined and without boundaries, initiated by investigative officers totally separate from any prosecutorial personnel. Thus, the statute's parameters have been shifted from a prosecutorial setting to an earlier period of investigation. Instead of applying strict construction the majority has liberally interpreted the statute. An act penal in nature, generally one which imposes punishment for an offense committed against the state, is interpreted strictly. *State ex rel. Turner v. Koscot Interplanetary, Inc.,* 191 N.W.2d 624, 629 (Iowa 1971).

The majority reads the statute that the crime is committed when a person flees to avoid the commencement of a criminal proceeding. I believe the crime is committed when a person flees to avoid a prosecution which comes into existence only after the commencement of a criminal proceeding.

In the case at bar, no criminal proceedings had been commenced against defendant when he left Iowa for Colorado. He could not therefore have violated the statute as a matter of law. Defendant's motion to dismiss the charge should have been sustained. I would reverse.

NEUMAN and ANDREASEN, JJ., join this dissent.