Rocco Salvatore LUPINO, Appellant,

v.

UNITED STATES of America.

John Frank AZZONE, Appellant,

v.

UNITED STATES of America.

Nos. 16163, 16164.

United States Court of Appeals
Eighth Circuit.

July 7, 1959.

See also 171 F.Supp. 648.

Richard B. Ryan, St. Paul, Minn. (Sydney W. Goff and Allen H. Aaron,

St. Paul, Minn., were with him on the brief), for appellants.

Fallon Kelly, U. S. Atty., St. Paul, Minn. (Clifford Janes, Asst. U. S. Atty., St. Paul, Minn., was with him on the brief), for appellee.

Before GARDNER, Chief Judge, and WOODROUGH and MATTHES, Circuit Judges.

WOODROUGH, Circuit Judge.

The appellants were separately indicted in two counts for violations of 18 U.S.C. § 1073, commonly known as the Fugitive Felon Act, in that each of them did (in the first count) "feloniously flee, move and travel in interstate commerce from the County of Ramsey, State of Minnesota, to the City of Florence, in the County of Florence, State of South Carolina, * * * with intent to avoid prosecution under the laws of the State of Minnesota for the crime of murder in the first degree as defined by the laws of the State of Minnesota, to-wit, the murder of one Anthony Ralph De Vito committed on or about the 28th day of September, 1953, in the Third Division, State and District of Minnesota." And in the second count "to avoid prosecution under the laws of Minnesota for the crime of kidnapping as defined by the laws of Minnesota, to-wit, the kidnapping of one Anthony Ralph De Vito committed on or about the 28th day of September, 1953, in the Third Division, State and District of Minnesota." They plead not guilty and were tried at the same time, were found guilty by the jury and each was sentenced under general sentence to five years imprisonment and $5,000 fine. They appeal separately but their appeals are heard on one record and are submitted as provided by Rule 10(f) of this court, 28 U.S.C.A., upon stipulation approved and certified to us by the District Judge presiding at their trial as the record necessary to fully present the questions raised by the appeals as limited in the stipulation.

Through this procedure but a single point for reversal of the judgments has been urged upon us. It is established that no prosecution has ever been commenced by the State of Minnesota against either of these appellants or against any other person for either of the alleged crimes of murder of Anthony Ralph De Vito or kidnapping of him. Appellants contend that such state prosecution for one offense or the other is a condition precedent to their prosecution for violation of the Fugitive Felon Act. They properly preserved the point by stipulation of the fact, pretrial motions for dismissal, motions for acquittal made at the close of all the evidence, and motions for acquittal after verdicts and the Court held and instructed the jury that the Government was not required to plead or prove the existence or pendency of a prosecution by the State of Minnesota against either of the defendants for either of the alleged crimes of murder or kidnapping. If in law a state prosecution was an essential prerequisite as contended, the conviction appealed from should be reversed and the indictments against appellants dismissed.

Counsel for appellants analyze the wording of Section 1073, taking first the lone word "prosecution" appearing therein and then the word in its immediate context and then considering the section with its two paragraphs as a whole to persuade that the true intent of the section is to denounce only one who flees into another state with the proscribed intent after the state from which he flees has begun prosecution against him.

But we are not so persuaded. The statute denounces any person who acts in a certain way "with intent to avoid prosecution" and in that context "to avoid prosecution" conveys the concept of acting to avoid "being prosecuted". If one speaks of a person acting "to avoid persecution" or "to avoid execution" certainly without more the thought is conveyed of a person acting to avoid being persecuted or executed. It is even so as to prosecution.

We agree with the reasoning and conclusion of the Court of Appeals of the

Second Circuit in United States v. Bando, 244 F.2d 833. In that case the charge was conspiracy to transport a fugitive against whom no state charge had been filed. Defendants' guilt depended on such flight being proscribed by Section 1073. Defendants' counsel argued that it would not be an offense under Section 1073 for a person who committed the crime of mayhem to flee across the state lines before a prosecution against him had been formally instituted, as by the filing of a charge or indictment. But the court said, 244 F.2d at page 843:

"An analysis of Sec. 1073 does not support any such narrow and strained construction The words 'to avoid prosecution' mean 'to avoid being prosecuted.' The statute does not say 'to avoid a *pending* prosecution.' Nor is the word 'charged' used in the first half of Sec. 1073 in relation to the flight 'to avoid prosecution'; but it is used, quite naturally, in the second half of Sec. 1073 in relation to a flight 'to avoid giving testimony.' The two are separate crimes. The latter requires some pending criminal proceeding. The former does not. It is sufficient if the fleeing felon is 'subject to prosecution.' United States v. Miller, D.C., 17 F.Supp. 65, 67.

"Sec. 1073 was part of the anti-racketeering legislation passed by the 73d Congress (1934). It was intended to enable federal agencies to go into action against criminals who 'flee from the scene of the crime beyond the jurisdiction of the State wherein the crime is committed and eventually escape punishment entirely.' The construction of Sec. 1073 which appellants offer, would serve in great measure to frustrate the federal law enforcement agencies by preventing them from going into action promptly, and it would set a premium on a quick get-away across State lines by the criminal who had committed one of the crimes of violence listed in Sec. 1073."

In Barker v. United States, 5 Cir., 178 F.2d 803, 805, the indictment against Barker charged that he traveled from a place in Texas to one in Mississippi intending thereby to avoid prosecution for an offense of burglary committed by him in Texas. It was argued in his behalf that the provisions of the section required that a violator of the statute must be charged by the State with the offense and thereafter have traveled from the State. But the decision was to the contrary. The court declared that "the gravamen of the offense * * * is that the defendant fled from a state with intent to avoid prosecution therein."

It seems clear to us that the crime denounced by Sec. 1073 is complete when the offender crosses the border of the state with intent to avoid prosecution for a specified crime and that its scope is not limited to the cases where such crossing is delayed until after a prosecution has been begun by the offended state.

Such flights by perpetrators of crimes against the states are a common means of hindering state justice as is well known and, as it is the federal government which accords the freedom of movement throughout the country that makes the flights possible, it is plainly within the province of that government to regulate this abuse of it. The abuse is against the peace and dignity of the United States and also that of the States.

The District Judge expressed his conclusions in this case with which we are in accord as follows:

"A reading of the statute leaves one with the impression that the principal elements essential to its [Sec. 1073] violations are: (1) the commission of a crime, followed by (2) interstate travel and (3) with intent to avoid prosecution under the laws of the state from which flight originates. There is no indication that the expression 'prosecuted' is used in any established technical or legal sense.

"If the construction urged by the defendant were the correct one, then I dare say that the statute would be an ineffective aid to the capture or prosecution of fleeing felons because of the time which would necessarily be required to institute some formal prosecution. It must be an innate instinct of a person who has committed a crime to immediately leave the scene. By modern means of transportation it takes only a matter of hours for one to reach a state border and move into interstate commerce. It would normally take at least a day, and more likely several days, for a complaint or information to be filed. To summon a grand jury and secure the return of an indictment would probably take much longer. Hence, if defendant's interpretation of the statute is accepted, the law would be an ineffective instrument for justice."

It is argued that cases may arise where a man who had nothing to do with a crime may imagine that he will be prosecuted for it and under that delusion may cross the state border to avoid prosecution.

But in this case the court instructed the jury that neither defendant could be convicted unless the jury was convinced beyond reasonable doubt that he committed the murder and the kidnapping charged in the indictment and had apprehension that he would be prosecuted for such crime and fled the state with intent to avoid prosecution therefor.[1] Undoubtedly the determination by the jury that defendants committed the crimes also had to do with the conclusion that the subsequent travel of defendants in interstate commerce to Georgia was with the intent charged in the indictment.

It is true that wherever an act that is innocent and lawful in itself is made criminal by reason of the intent with which it is committed a possibility of error results as to whether the requisite intent existed in a given case. That possibility is present under this statute. But we do not find the statute either ambiguous or unconstitutional.

The gravamen of the offense proscribed by it is as declared in Barker v. United States, supra, "that the defendant fled from a state with intent to avoid prosecution therein." An abuse of the freedom of movement in interstate commerce is consummated with the flight over the state border, whether the state has begun prosecution or not. The indictment includes all the elements that constitute the gravamen of the offense by charging the crimes committed and the flight of defendants with the proscribed intent.

As we find no error in the record and judgments the judgments are affirmed.

1. The court instructed:
"In order to find either of these defendants guilty of the crimes charged against them, two things are essential:
"First, you must find beyond a reasonable doubt that the particular defendant kidnapped and murdered Anthony De Vito in the State of Minnesota."

\*     \*     \*     \*     \*

"The second essential is proof beyond a reasonable doubt that the particular defendant fled from Minnesota across a state line with the intent of avoiding prosecution for the crimes of murder and kidnapping.

\*     \*     \*     \*     \*

"Now, in order for any travel in interstate commerce to constitute a violation of this unlawful flight statute, it must occur and must be coupled with this intent to avoid prosecution. It is not required that at the time of interstate travel there be then existing charges by state authorities through indictment or complaint or otherwise; but the intent to avoid prosecution does require that the defendant be aware at the time of his interstate travel of the fact that the crime of murder or kidnapping of De Vito had been committed and that at that time the defendant had an apprehension that he would be or might be the subject of a Minnesota prosecution for such crime; and further that such apprehension on the part of the defendant or defendants was a reasonable one and not merely a figment of his imagination."