Rocky LUPINO, No. 21293, Petitioner,

v.

Ralph TAHASH, Warden, Minnesota State
Prison, Respondent.

No. 3-65-Civ.-170.

United States District Court
D. Minnesota,
Third Division.

March 30, 1966.

John S. Connolly, St. Paul, Minn., for petitioner.

Gerard Snell, Sol. Gen. of Minnesota, St. Paul, Minn., Miles W. Lord, U. S. Atty., Patrick J. Foley, Asst. U. S. Atty., Minneapolis, Minn., for respondent.

DEVITT, Chief Judge.

Rocky Lupino, serving a 2–80 year term in the Minnesota State Prison for kidnapping, petitions for a writ of habeas corpus claiming the deprivation of several United States Constitutional rights in connection with his trial in the Ramsey County, Minnesota, District Court in 1960.

Lupino appealed his conviction to the Minnesota Supreme Court. That court affirmed. State v. Lupino, 268 Minn. 344, 129 N.W.2d 294. Later, it denied a petition for rehearing. The pertinent facts are fully set out in that opinion. The United States Supreme Court denied certiorari. 379 U.S. 978, 85 S.Ct. 681, 13 L.Ed.2d 569.

Previously, in 1958, Lupino was convicted in the United States District Court for the District of Minnesota for violation of the Fugitive Felon Law, 18 U.S.C.A. § 1073, in connection with the same set of facts, to wit, the kidnapping and murder of one Anthony DeVito. The Court of Appeals affirmed this conviction. 268 F.2d 799 (8th Cir.1959). Certiorari was denied, 361 U.S. 834, 80 S.Ct. 86, 4 L.Ed.2d 75. See also D.C., 171 F.Supp. 648.

Later this court denied Lupino's motion to vacate the sentence, D.C., 185 F.Supp. 363, and denied his motion to appeal in forma pauperis, D.C., 186 F. Supp. 233. The Court of Appeals dismissed the appeal as frivolous. 285 F.2d 429 (8th Cir.1960).

In this habeas corpus matter, the Court made a pretrial order, based on

the stipulation of all counsel which was signed as well by Lupino, which set out all of the issues to be litigated and rec-ognized the waiver of all other issues. The pretrial stipulation and order are set out in the footnote.[1]

1. "PRETRIAL STIPULATION AND ORDER

"The petitioner has brought a writ of habeas corpus in this court contesting the validity of his custody in the Minnesota State Prison at Stillwater, Minnesota. This custody is based upon the conviction of the petitioner in the District Court of Ramsey County on a charge of kidnapping which conviction occurred on the 7th day of April, 1960.

"The court rules that all issues which affect the validity of the criminal judgment and sentence shall be presented at this hearing and petitioner expressly waives by this stipulation all issues not included herein. The petitioner will have the burden of proof on all of the issues. The court at the hearing will consider the following issues:

"1. Did the refusal of the trial judge to grant a motion for a change of venue in the face of pretrial publicity violate petitioner's constitutional rights?

"2. Did the trial judge by failing to sequester the jurors during the trial in the face of continuing publicity violate petitioner's constitutional rights?

"3. Were the petitioner's constitutional rights violated by a contact between one of the jurors and a state's witness?

"4. Were the petitioner's constitutional rights violated by the trial court's refusal to grant process for the compulsory attendance of petitioner's witnesses?

"5. Were the petitioner's constitutional rights violated by the state's calling a co-defendant as a witness knowing such co-defendant would refuse to testify on the grounds that his testimony might tend to incriminate him?

"6. Was the petitioner deprived of his constitutional rights by the rulings on evidence at the trial, including: allowing the state to cross examine witnesses called on behalf of the state; allowing the state to refer to petitioner's involvement in other crimes; refusing to direct the state to submit to counsel for the defendant prior statements made by witnesses called on behalf of the prosecution; allowing the state to exercise a peremptory challenge to a juror who had previously been accepted; overruling a demurrer to the indictment based on the statute of limitations. The court shall consider whether these rulings, individually or cumulatively, deprived petitioner of his constitutional rights.

"7. Was the petitioner deprived of his constitutional rights to a fair trial by an impartial jury when the trial court denied petitioner's motion for a mistrial based upon the county attorney's questioning of State Witness, Sam Cimin?

"8. Petitioner expressly stipulates that he presently knows of no other basis for attacking this conviction.

"9. Was petitioner deprived of his constitutional rights to a fair trial by an impartial jury on all relevant evidence where Alex DeGoode testified on behalf of the State? Petitioner asserts that DeGoode and the State, before DeGoode testified, exchanged his State prosecution then pending against DeGoode for testimony favorable to the State.

"Petitioner's claim that he was deprived of his constitutional rights is based upon the Fourteenth Amendment to the United States Constitution and all rights included therein.

"All parties signatory to this stipulation agree that this stipulation shall supercede all pleadings, papers, files, and briefs in respect to the issues which are to be submitted to the court.

"/S/ ROCKY LUPINO

Rocky Lupino, Petitioner

"/S/ JOHN S. CONNOLLY

John S. Connolly, Attorney for Petitioner

"/S/ GERARD W. SNELL

Gerard W. Snell, Attorney for Respondent

"/S/ PATRICK J. FOLEY

Patrick J. Foley, Attorney for United States

ORDER

"Upon the stipulation herein,

"IT IS ORDERED that the above stipulation hereby supercedes all pleadings, papers, files, and briefs in respect to the issues which are to be submitted to the court.

"IT IS ORDERED that a hearing be held in respect to all of those issues. The petitioner will have the burden of proof on each issue.

"IT IS FURTHER ORDERED that the court shall rule with respect to each issue separately as to whether it affects petitioner's conviction, judgment, sentence, and incarceration as a result of the State court actions.

"IT IS ORDERED that petitioner shall present to this court before hear-

█ It should be recalled that each of the issues here presented was passed upon by the Supreme Court of Minnesota. This fact is not disputed and is alleged by the petitioner in his petition for a certificate of probable cause filed on July 29, 1965. Petitioner's claim is that the Supreme Court of Minnesota erred in ruling as it did, and he asks us to correct that error. Of course, this isn't the proper procedure. We are not an appellate tribunal of the state courts. True it is that we have jurisdiction over claimed deprivations of United States Constitutional rights. But the state courts have equal responsibility for protecting those rights. And here, the record shows, that the experienced state trial judge and the State Supreme Court were most conscientious in considering, and ruling upon, the Constitutional contentions of the petitioner. We are not faced in Minnesota with an indifference by the State courts to the post-conviction complaints of indigent defendants. Our Minnesota laws provide adequate post-conviction remedies, and the State courts through the concerned leadership of Chief Justice Oscar Knutson have long followed a wise policy of furnishing the assistance of competent appointed counsel for indigent defendants in criminal cases. The Bar of Minnesota has been most cooperative in this effort.

In this case, then, the record reflects that the courts of Minnesota have furnished this indigent defendant with the means through which he could assert his Constitutional claims and have given him a full and fair hearing thereon.

More than that, the United States Supreme Court has considered petitioner's claims and, in effect, has found them groundless by denying the petition for a writ of certiorari.

But since the 1963 landmark post-conviction cases of the United States Su-preme Court, Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770, Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837, and Sanders v. United States, 373 U.S. 1, 83 S.Ct. 1068, 10 L. Ed.2d 148, we trial judges have been admonished to "take no chances" and to afford an evidentiary hearing to indigent defendants in just about every case where it is requested. That is what we did here.

The court gave Lupino a full evidentiary hearing responsive to his petition for a writ of habeas corpus. He was represented by appointed counsel, John S. Connolly, the same counsel who represented him in the State court trial. Lupino was personally present and was afforded the opportunity to testify.

On the basis of the evidence presented, and the record of the proceedings in the state courts, the court separately finds, as to each of the issues set out in the stipulation and pretrial order, that the petitioner has not discharged his burden of proof by showing a violation of his constitutional rights, that each of the claims is groundless and that each of the questions posed by the stipulation and order is properly answered in the negative.

█ Petitioner's principal complaint, and the one to which he devotes most of his argument, deals with the question of prejudicial pretrial and trial publicity and the refusal of the trial judge to grant a change of venue and to sequester the jurors during trial in the face of the claimed prejudicial publicity.

The record does reflect extensive pretrial and trial publicity in the newspapers and on radio and television about the facts of the case. The Court has examined the news clippings, read television news scripts and observed television news pictures about the case. We have also read the transcript of the interroga-

ing any additional issues which he desires to present on any collateral attack as to either one of his convictions in State court above described. Issues known to petitioner but not presented to the court in the above stipulation or before hearing will be deemed waived by petitioner.

"Dated: September 17, 1965.

"/S/ EDWARD J. DEVITT
Edward J. Devitt, Chief Judge
United States District Court"

tion of jurors and heard the testimony of two of the jurors who sat on the case, as well as that of William E. McGivern, a television newscaster, and have read pertinent parts of the record. We conclude from the entire record that petitioner's constitutional rights were not abridged by the rulings of the trial judge. The petitioner has not shown that his constitutional rights were violated in any respect.

■ In arguing for the grant of the writ, petitioner, allowing that there is no actual showing of prejudice, urges us to presume prejudice in view of the claimed volume of prejudicial publicity in somewhat the same manner as negligence is presumed in a res ipsa loquitur civil case, and cites several recent United States Supreme Court cases in support of the theory, particularly Irvin v. Dowd, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 and Rideau v. State of Louisiana, 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663.

But those were cases where the actual prejudice was manifest.

In Irvin v. Dowd the voir dire examination indicated that 90% of 370 prospective jurors and ⅔ of those seated in the jury had an opinion as to the guilt of the defendant and the accused unsuccessfully challenged for cause several persons accepted on the jury. Clearly the trial court was obligated, in the face of these facts, to grant the motion for change of venue.

And in *Rideau* a bank robber was arrested the night of the commission of the crime of bank robbery and interviewed in his jail cell by the sheriff. The interview was recorded on film and sound track, and then extensively and repeatedly broadcast so that most of the community observed or heard about the interview which, among other things, contained Rideau's confession. Very shortly after this he was tried in the state court and convicted. Manifestly it was error for the trial judge not to grant a change of venue where so many of the prospective jurors in this small, compact,

cohesive community had been repeatedly exposed "in depth" close to the time of trial to what the Supreme Court calls the "spectacle" of the defendant personally confessing in detail to the crimes with which he was later charged. This, of course, was quite a different fact situation from Lupino's case. And the allegedly prejudicial publicity in Lupino's case dealt, not with a recently made confession, but principally with unsuccessful efforts to find DeVito's body—a search that had started several years before trial.

The facts surrounding the claimed kidnapping and murder of Anthony DeVito by Lupino and his confrere, Azzone, were already "old hat" to the citizens of Minnesota at the time of his state court trial in 1960. The kidnapping and alleged murder took place in 1953. The unexplained disappearance of DeVito was long a subject of reports by all of the news media. As noted, Lupino and Azzone were tried in the federal court in 1958 for a violation of the Fugitive Felon Law in connection with this same set of facts—that is, the kidnapping and murder of DeVito. This trial, too, was publicized in most of the news media in the area of the Twin Cities of Minnesota.

So that at the time of Lupino's trial in the state court in 1960, the facts surrounding the case were only of passing interest to most of the citizens of Ramsey County from which area the jurors were drawn.

Judge Ronald Hachey, who presided at the state court trial, was very attentive to the claims of prejudicial publicity. After listening to the evidence in connection with it, the court concluded that there was no reasonable showing that the public had been inflamed or wrought up because of the publicity on radio programs or through news media, and in explanation of his later denial of the motions for a change of venue, stated that he doubted if there was any corner of the state which could be selected for venue of the trial which would afford less publicity than that already apparent in Ram-

sey County because the news media covered most of the state.

In arriving at his conclusion to deny the change of venue motion, the trial court was impressed by a report of,

"[A] survey of the citizens of Ramsey and Washington Counties and the suburban area, in which it was found out not one person in 10 who were contacted had a working knowledge of the details of the main events of this particular crime. Despite the plea of the participants of the program, Behind the Parade, to the public for their participation and cooperation in the assistance of law enforcements (sic), the record discloses that not one in 10 of the persons in the area in which the body is * * * allegedly buried * * * [is informed] as to details leading up to the present time in connection with this crime." Quoted in 129 N.W.2d at 300.

In this connection, counsel for the petitioner does not cite or discuss the more recent post-Irvin United States Supreme Court case of Beck v. Washington, 369 U.S. 541, 82 S.Ct. 955, 8 L.Ed.2d 98, which discusses the standard to be employed in cases of this kind. The court said:

"To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." 369 U.S. at 557, 82 S.Ct. at 964, quoting 366 U.S. 717, at 723, 81 S.Ct. 1639 at 1642, 6 L.Ed.2d 751.

The Beck case belies the claimed broad sweep of Irvin v. Dowd as urged by the petitioner. There was no showing in the state court and there has been no showing here that any juror possessed, or through publicity acquired, a preconceived opinion about the defendant's guilt; or that if he did, that such juror did not lay aside such opinion in reaching his verdict.

To repeat Justice Holmes's oft-quoted observation:

"If the mere opportunity for prejudice or corruption is to raise a presumption that they exist, it will be hard to maintain jury trial under the conditions of the present day." Holt v. United States, 218 U.S. 245, 251, 31 S.Ct. 2, 54 L.Ed. 1021.

And so I see no merit in petitioner's res ipsa loquitur theory as applied to publicity in this criminal case. In fact, the standard set out by the United States Supreme Court in Beck, supra, requires some showing of prejudice as a basis for relief.

The court has considered each of the other claimed grounds of alleged deprivation of constitutional rights and finds, not only that the petitioner has failed to discharge his burden of proof in connection therewith, but that each of such claims is groundless.

Counsel for the respondent will please prepare and submit within 5 days specific findings of fact and conclusions of law, together with appropriate Order for Judgment, as to each of the issues submitted by the stipulation and pretrial Order.

The petition is dismissed.