**CITY DISPOSAL SYSTEMS, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 81–1406.

United States Court of Appeals, Sixth Circuit.

July 9, 1985.

Rehearing and Rehearing En Banc Denied Aug. 26, 1985.

Theodore R. Opperwall, argued, Dickinson, Wright, McKean, Cudlip & Moon, Detroit, Mich., for petitioner.

Elliott Moore, Deputy Associate General Counsel, N.L.R.B., Howard Perlstein, argued, Washington, D.C., Harris Berman, Compliance Officer, N.L.R.B., Detroit, Mich., for respondent.

Before LIVELY, Chief Judge, and JONES and MILBURN, Circuit Judges.

PER CURIAM.

The National Labor Relations Board (the Board) once again seeks enforcement of its order which in relevant part directs City Disposal Systems, Inc. (City Disposal) to reinstate James Brown, a former employee whose discharge allegedly violated section 8(a)(1) of the National Labor Relations Act (NLRA). Brown was discharged for refusing to drive a truck which he believed to be unsafe. We previously denied enforcement of the order on the ground that Brown was not engaging in concerted activities by refusing to drive the truck. *City Disposal Systems, Inc., v. NLRB*, 683 F.2d 1005 (6th Cir.1982), *rev'd*, —— U.S. ——, 104 S.Ct. 1505, 79 L.Ed.2d 839 (1984). Our denial of enforcement was founded upon this Circuit's consistent rejection of the Board's legal theory of concerted action, which was first enunciated in *Interboro Contractors, Inc.*, 157 N.L.R.B. 1295 (1966), *enforced*, 388 F.2d 495 (2d Cir.1967).

On further review, the Supreme Court reversed and resolved a conflict among the circuits by holding that the *Interboro* doctrine represents a reasonable interpretation of the NLRA's purposes. *NLRB v. City Disposal Systems, Inc.*, —— U.S. ——, 104 S.Ct. 1505, 79 L.Ed.2d 839 (1984). On remand, therefore, we must apply the *Interboro* doctrine and determine whether substantial evidence supports the Board's finding that Brown's refusal to drive the truck was based on an honest and reasonable belief that it was unsafe. After reviewing the record as a whole, we conclude that substantial evidence supports the Board's finding and we grant enforcement of the Board's order without modification.

The following facts, as found by the Administrative Law Judge (ALJ), are material to our review. City Disposal hauls garbage under contract for the city of Detroit.

Brown was a truck driver for City Disposal who was employed under the terms of the company's collective bargaining agreement with Teamsters Local 247. It was City Disposal's practice to assign each driver to operate a particular tractor-trailer unit and Brown generally used truck number 245 to haul garbage from Detroit to a landfill approximately 37 miles away.

On Saturday, May 12, 1979, as Brown maneuvered truck 245 within the landfill to dump his cargo, he narrowly avoided being hit by City Disposal's truck 244, which fellow employee Frank Hamilton found difficult to stop because of brake failure. Brown and Hamilton returned to City Disposal's Detroit facility, where they approached company mechanics Francis Castelono and David Ammerman. Castelono and Ammerman agreed to fix truck 244's brakes "over the weekend," of which only Saturday evening and Sunday remained.

On Monday, May 14, Brown began work at 4 a.m. using truck 245. Later in the morning he encountered difficulty operating truck 245 and advised mechanic Ammerman that it was defective. Ammerman told Brown that City Disposal's garage was full with trucks requiring repairs and that he would not be able to repair truck 245 that day. Brown next encountered his supervisor, Otto Jasmund. Brown informed Jasmund that truck 245 was inoperable and that Ammerman had told Brown to go home. After confirming that truck 245 would not be repaired that day, Jasmund told Brown to punch out and go home.

Before Brown left, however, Jasmund returned and asked him to drive truck 244. Brown answered, "No, there's something wrong with that truck." Brown explained that "a grease seal or something leaking" was affecting the brakes of truck 244. An argument developed between Jasmund and Brown, in which a second supervisor, Robert Madary, intervened. When Madary requested that Brown drive truck 244, Brown again declined and stated that the truck had problems. Rather than assuring Brown that truck 244 had been repaired, Madary replied that half of City Disposal's trucks had problems and that the company would be unable to perform its services if it

attempted to remedy every problem. As Madary complained about the amount of garbage awaiting disposal, Brown responded by asking whether Madary planned to "put the garbage ahead of the safety of the men." Madary scorned this remark and departed, after which Brown went home. Later that day, City Disposal informed Local 247 that it had discharged Brown. Although Local 247's recording secretary and Brown met with supervisors Jasmund and Madary that very afternoon, City Disposal refused to reinstate Brown.

The Supreme Court's opinion in the present case articulated a dual standard by which we determine whether the Board's finding that Brown engaged in concerted activity is supported by substantial evidence.

> As long as the employee's statement or action is based on a reasonable and honest belief that he is being, or has been, asked to perform a task that he is not required to perform under his collective bargaining agreement, and the statement or action is reasonably directed toward the enforcement of a collectively bargained right, there is no justification for overturning the Board's judgment that the employee is engaged in concerted activity . . . .

*City Disposal*, 104 S.Ct. at 1514.

In the present case, the Supreme Court has resolved the second, and purely objective, element of this dual standard: viewing objectively the employee's words and actions, has the employee invoked a collectively-bargained right? A single employee's statements and actions may satisfy this element of the test for concerted activity regardless of the employee's state of mind at the time, and despite the fact that the employee fails to inform or involve co-workers in enforcing the right, the employee's statements do not refer specifically to the collective bargaining agreement, and the employee subsequently files a grievance on his own behalf that his union finds to have no merit. The Supreme Court considered the words and actions through which Brown stated that truck 244 was unsafe and looked to the collective bargaining agreement by which City Dis-

posal promised not to ask employees to drive unsafe trucks. *City Disposal*, 104 S.Ct. at 1511–12. In applying the *Interboro* doctrine, the Court in effect rejected as irrelevant the evidence that Brown did not warn other employees that the truck was unsafe. *See City Disposal*, 104 S.Ct. at 1513; 683 F.2d at 1007. The Court also did not consider relevant the ALJ's finding that the union refused to invoke the contractual grievance procedure on behalf of Brown. *City Disposal*, 104 S.Ct. at 1514. The Court emphasized that Brown's statements and actions in refusing to drive truck 244 were reasonably directed toward enforcement of a collectively-bargained right. *See City Disposal*, 104 S.Ct. at 1515.

■■ The primary question before us on remand is the first element of the standard: whether substantial evidence supports the finding that Brown's statements and actions in refusing to drive truck 244 were based on a reasonable and honest belief that he was being directed to perform a task that he was not required to perform under the collective bargaining agreement. It should be clear that this test is neither wholly subjective nor wholly objective. Action based upon an honest but unreasonable belief is not concerted. Similarly, an employee's action is concerted if it is both subjectively honest and objectively reasonable, "regardless of whether the employee turns out to have been correct in his belief that his right was violated." *City Disposal*, 104 S.Ct. at 1516. To determine whether substantial evidence exists that Brown acted on an honest and reasonable belief that a collectively-bargained right was being violated, we examine the collective bargaining agreement that created Brown's employment rights, the objective evidence known to Brown indicating that a right was being violated, and Brown's own words and actions.

■ Under the collective bargaining agreement, Brown had a right to refuse to drive unsafe trucks. Article XXI, Section 1 of the collective bargaining agreement establishes this right in general terms.

The Employer shall not require employees to take out on the streets or high-ways any vehicle that is not in safe operating condition or equipped with the safety appliances prescribed by law. It shall *not* be a violation of this Agreement where employees refuse to operate such equipment *unless* such refusal is *un*justified.

(Emphasis added). The aim of collective bargaining agreements is not only to create rights that benefit the employer or its employees, but also to divide responsibilities between the employer and its employees. Article XXI, Section 1 assigns City Disposal the responsibility of maintaining its trucks in safe operating condition. It also provides that an employee's refusal to operate apparently unsafe equipment does not generally violate the Agreement. Under this provision, the company bears the burden of demonstrating that the employee's refusal to operate a truck is unjustified. City Disposal's burden to demonstrate to its employees that the equipment is safe naturally accompanies its responsibility to maintain safe equipment. If the parties had intended that employees bear the burden of justifying their refusal to operate apparently unsafe trucks, they would have drafted the last sentence of Article XXI, Section 1 to read as follows: It shall be a violation of this Agreement where employees refuse to operate such equipment unless such refusal is justified. We do not find this provision or its equivalent in the Agreement.

The provisions of Article XXI, Section 4 support this interpretation of the assignment of responsibilities. To properly invoke City Disposal's burden of demonstrating that a truck was safe, an employee must have informed the company of the defect.

Employees shall immediately, or at the end of their shift, report all defects of equipment. Such reports shall be made on a suitable form furnished by the Employer and shall be made in multiple copies; one copy to be retained by the employee. The Employer shall not ask or require any employee to take out equipment that has been reported by any other employee as being in an unsafe oper-

ating condition *until same has been approved as being safe by the mechanical department.*

(Emphasis added). In sum, Brown's right under the collective bargaining agreement was to refuse to operate equipment that he or another employee had reported to be unsafe until City Disposal demonstrated that the truck's safety had been approved by the mechanical department.

Substantial evidence supports the ALJ's finding that Brown reasonably and honestly believed that Jasmund and Madary were violating this right when they required him to drive truck 244 on May 14, 1979. Brown knew that less than forty-eight hours earlier truck 244 had showed "no sign" of brakes and that as a result Frank Hamilton had nearly collided with him. Brown was present when Hamilton promptly reported the defect to City Disposal's mechanics on Saturday afternoon. He knew from Ammerman, the mechanic, that by Monday morning so many City Disposal trucks were unsafe or inoperable that the mechanics would be unable to repair his unit, truck 245, during the rest of the day. Finally, he knew that supervisor Madary replied to his complaint not by assuring Brown that the mechanical department had approved truck 244 as safe, but by stating that the problems with half of City Disposal's trucks could not be allowed to stand in the way of hauling garbage.

Admittedly, City Disposal's mechanics had stated that they would repair truck 244 over the weekend, Brown did not test-drive the truck before declining to operate it, and another driver subsequently operated truck 244 for the rest of the day without incident. To satisfy the test for concerted activity, Brown's belief needed to be reasonable, not correct, and the ALJ's finding that Brown acted on a reasonable belief need only be supported by substantial evidence. Brown possessed objective evidence that truck 244 had been reported to be defective, that City Disposal's mechanical department was overwhelmed with truck repair work, and that his supervisors were expressing indifference to safety concerns rather than assuring him that truck 244 had been approved by the mechanical department as safe. Substantial evidence existed in the record to support the finding that Brown reasonably believed truck 244 was unsafe.

The finding that Brown honestly believed truck 244 to be unsafe is also supported by substantial evidence. His statements to supervisors Jasmund and Madary, during a heated discussion, parallel the objective evidence of the truck's defect. To Jasmund, Brown specified that "there was a grease seal or something leaking causing it to be effecting the brakes [sic]." He told Madary that he declined to drive truck 244 because of its problems. If believed, Brown demonstrated honest concern when he asked Madary if he intended to "put the garbage ahead of the safety of the men?" Brown's grievance, dated May 15, the day after his discharge, demonstrated Brown was relying on City Disposal's duty under Article XXI, Section 4, to assure him that a truck which had been reported defective had subsequently been repaired. In finding that Brown honestly believed truck 244 to be unsafe, the ALJ evaluated the credibility of Brown, Jasmund, Madary, and employee Walter Davis. The ALJ expressly considered both Brown's prior conviction for uttering and publishing, and evidence that Brown refused to drive truck 244 because he considered it Hamilton's truck and considered truck 245 his own. We do not find the ALJ's credibility determinations to be unreasonable. *Local Union No. 948 v. NLRB,* 697 F.2d 113, 117 (6th Cir.1982). Nor does evidence that Brown also may have been motivated to drive truck 245 because it was more profitable than truck 244 undermine the substantiality of the evidence supporting the ALJ's finding that Brown honestly believed truck 244 to be unsafe. We, therefore, conclude that substantial evidence supports the ALJ's finding that Brown was engaging in concerted activity when he refused to drive the truck.

Our final question on remand is whether Brown's actions, although concerted, were protected. As the Supreme Court framed the issue, we must determine whether the collective bargaining agreement prohibited a City Disposal employee from refusing to drive a truck that was in fact safe, even if the employee reasonably and honestly be-

lieved it to be unsafe. *City Disposal*, 104 S.Ct. at 1514, 1516. The Agreement between City Disposal and Local 247 contains a no-strike clause, Article XI, Section 1, which bans employee work stoppages "of any kind whatsoever without the expressed approval" of the union. City Disposal maintains that if Brown's refusal to drive truck 244 is "unjustified" within the meaning of Article XXI, it represents an illegal strike under Article XI and, thus, is unprotected activity. We have affirmed the ALJ's determination that Brown's actions were not "unjustified" under Article XXI. Nor do we find that Brown's actions were "abusive." *Crown Central Petroleum Corp. v. NLRB*, 430 F.2d 724, 729 (5th Cir.1970). Brown's refusal to drive truck 244 was protected activity.

We affirm the Board's findings that City Disposal discharged Brown because of his concerted protected activity and that it thereby violated § 8(a)(1) of the NLRA. Accordingly, the order of the Board is EN-FORCED without modification.