NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

EDGAR SPRING, INC. d/b/a Spring Industries and Tri-State Asphalt Corporation, Respondent.

Nos. 85–5858, 85–5938.

United States Court of Appeals, Sixth Circuit.

Argued June 13, 1986.

Decided Sept. 4, 1986.

James A. Rydzel (argued), Barbara J. Leukart, Cleveland, Ohio, for respondent.

Elliott Moore, Deputy Associate Gen. Counsel, Washington, D.C., Sandra S. Elligers, Kenneth Hipp, Ellen O. Broadman (argued), Frederick Calatrello, Director, Region 8, NLRB, Cleveland, Ohio, for petitioner.

Before MARTIN and GUY, Circuit Judges, and BROWN, Senior Circuit Judge.

PER CURIAM.

This case is before the court on application of the National Labor Relations Board (petitioner) for enforcement of its order issued March 18, 1985 against Edgar Springs, Inc. (respondent)[1] d/b/a Tri-State Asphalt Corporation (Tri-State) and Spring Industries (Spring) finding unfair labor practices. Respondent has filed a cross-petition for review of the Board's decision and has requested that this court also set aside an order of the Board issued August 26, 1985 correcting the March 18th order. Having found no error by the Board, we grant enforcement.

## I.

### SUMMARY OF PROCEEDINGS BELOW

Petitioner filed three separate unfair labor practice charges against respondent in October of 1982 which were subsequently consolidated by the Board. As the charges against Spring and Tri-State arose out of unrelated events, we shall review the Board's order as to each company separately.

### Unfair Labor Practices of Spring

The facts are essentially as found by the administrative law judge. Rhona Miles was hired by Spring in May of 1982 to work as a flag operator. Miles was told by Spring that in order to work for the company she would have to sign a leasing contract agreeing to the rental of certain safety equipment at the rate of five dollars per hour. Miles signed the contract, and, shortly before beginning her employment, joined Local 809 of the Laborer's International Union of North America (Local 809). Spring was a signatory to certain "project agreements" with Local 809 which required Spring to provide at no charge safety equipment to its covered employees. Although Miles was a covered employee under one of these project agreements, Spring continued to enforce its leasing contract with her and eventually stopped payment on one of her paychecks in order to collect arrearage which had accrued under her contract with the company.

The administrative law judge (ALJ) found that Spring had violated numerous provisions of the National Labor Relations Act (Act), 29 U.S.C. § 151 *et seq.* (1982), by

---

1. Spring Industries, Inc. and Tri-State Asphalt Corporation are both engaged in the business of road repair. Glenn Straub is the vice-president, manager and principal stockholder of the two companies.

enforcing its lease agreement with Miles when she was covered by project agreements requiring Spring to provide the leased equipment. Respondent did not file exceptions with respect to these findings and the ALJ's decision was subsequently adopted by the Board in its order of March 18, 1985.

On appeal, respondent maintains that enforcement of the Board's order as to Spring is inappropriate as respondent has complied with the Board's order by reaching a monetary settlement with the Board on the issue of damages.

**Unfair Labor Practices of Tri-State**

Early in 1982, Spring received a contract to do highway repair on a site near Cambridge, Ohio. Because of a personnel shortage at Spring, Straub directed Tri-State project superintendent James Lampert to offer work on the project to a Tri-State crew supervised by Wilson Fulton. Straub instructed Lampert to make clear to the crew that Spring would be its employer on the project and that any overtime, therefore, would be paid in accordance with Spring's overtime policies.[2] Pursuant to Straub's request, Lampert advised the crew that Spring was its employer on the project, but failed to inform each crew member that overtime would be paid in accordance with Spring's policies. The crew accepted employment on the Cambridge site and for the first month and a half of their employment was inadvertently paid overtime under Tri-State's more generous overtime terms.

On July 12, 1982, the crew members received a memo from the payroll department informing them that their overtime had been erroneously calculated and that any such overpayments would be deducted from their future paychecks. Thereafter, members of the crew contacted their union representatives who filed on August 19, 1982 an unfair labor practice charge against Tri-State alleging that the failure to pay overtime under the terms of the Tri-State bargaining agreement violated provisions of the Act.

The crew continued to work on the site, and on August 25th were called to a meeting by Straub. Straub angrily asked the crew members whether they had been told that the Cambridge project was to be a Spring job and that overtime was to be paid in accordance with Spring's policies. The employees issued no response to Straub's queries. Straub then told the crew members that in view of their failure to deny knowledge of the stated terms of their employment, Straub was going to draft statements for their signatures indicating that they were satisfied with their wages and benefits. Straub intimated that their continued employment depended upon their signatures on the statements. Shortly thereafter, statements were prepared and distributed to the employees. All five members of the crew who refused to sign their statements were discharged. Only Wayne Anderson who signed his statement was retained by Spring on the project. Although Lampert informed two of the crew members that they were being laid off for lack of work, several days of work remained on the project following the layoffs.

The ALJ found that Tri-State violated provisions of the Act by laying off employees for their refusal to abandon their overtime grievance and by threatening to discharge employees for failure to abandon their grievance. In the course of the ALJ's discussion of the factual circumstances surrounding the discharge, the ALJ noted that the crew members who were laid off did not return to work in 1982 and were not offered employment by Tri-State until July of 1983. Although respondent filed exceptions, the Board on March 18, 1985 adopted the findings of the ALJ but found it unnecessary to determine whether the terminated employees were actually discharged or laid off by Tri-State. The Board did nevertheless indicate parenthetically in its order

---

**2.** Spring, a nonunion employer, paid overtime only for work performed in excess of forty hours per week. Tri-State, however, was required by a collective bargaining agreement to pay overtime for any work performed in excess of eight hours per day.

that the employees were recalled in the 1983 paving season.

On May 28, 1985, petitioner filed a motion for modification of the March 18th order, requesting that the Board leave the issue of when reinstatement was offered to the terminated employees to the compliance stage of the proceedings. On August 26, 1985, the Board issued an order correcting its earlier order by inserting the word "allegedly" at the end of the third line of footnote two of its March 18th order such that the corrected footnote read:

> We find it unnecessary to determine whether Respondent Tri-State discharged employees Murad, Kinnison, Morris, Uppole and Snodgrass as argued by the General Counsel and found by the judge, or laid them off (they were allegedly recalled in the 1983 paving season). Instead, we leave to the compliance stage of this proceeding the issue of when, without unlawful motivation, the Respondent would have laid off these employees at the end of the 1982 season and would have recalled them for the 1983 season.

Joint Appendix at 12 n. 2 (correction appearing in boldface). On August 27, 1985, the Board denied petitioner's request for modification.

On appeal, respondent challenges enforcement of the March 18th order of the Board against Tri-State on the ground of lack of substantial evidence. Respondent also contends that the Board abused its discretion in issuing its August 26th order correcting its earlier finding that crew workers were recalled by Tri-State in July of 1983.

## II.

## DISCUSSION

### A. Board Order of March 18, 1985

#### 1. As to Spring

As earlier indicated, respondent alleges that enforcement of the Board's order against Spring is improper and unnecessary as Respondent has complied with the order by negotiating a monetary settlement with the Board, presumably on the issue of Miles' damages.

We find absolutely no merit in respondent's position as the Supreme Court has clearly held that an employer's compliance with an order of the Board does not render an action for enforcement moot. *NLRB v. Mexia Textile Mills, Inc.*, 339 U.S. 563, 567, 70 S.Ct. 826, 828, 94 L.Ed. 1067 (1950). *See also NLRB v. Heck's, Inc.*, 369 F.2d 370, 371 (6th Cir.1966) ("[C]ompliance with [an] order [of the Board] is no defense against the entry of a decree of enforcement."). Moreover, we note in the instant case the equity of respondent's position is seriously undermined by the fact that respondent has not even fully complied with the Board's order. The order required respondent not only to make restitution to Miles for her loss of backpay but also to cease and desist from further unfair labor practices, negotiate with the union on terms and conditions of employment and post certain notices in respondent's plant. There is no evidence in the record to suggest that respondent has complied with these additional affirmative requirements.

#### 2. As to Tri-State

Respondent first claims that in light of the testimony presented indicating the crew members' knowledge of the proper terms of their employment at the Cambridge site, the Board erred in finding that the unfair labor practice charges brought against Tri-State were filed in good faith. *See City Disposal Systems, Inc. v. NLRB*, 766 F.2d 969, 972 (6th Cir.1985) (a charge filed with the Board must be made in an "honest and reasonable belief" that a collective bargaining right has been violated). Respondent points to the testimony of several members of the crew who either indicated that they were aware that Spring was their employer on the Cambridge site or that they understood at the beginning of their employment the proper overtime arrangements. Additionally, respondent urges us to take note of the fact that none of the employees contradicted Straub's assertion at the meeting on August 25th that crew members had been advised at the start of their work at the Cambridge site of the proper terms of their employment. One can infer from the employees' silence,

respondent maintains, evidence of their knowledge of the proper arrangements.

■ We disagree with respondent and believe that the finding of good faith made by the ALJ is supported by substantial evidence. Several members of the crew testified that they were not aware of the overtime ramifications of their jobs, although they had knowledge that Spring was their employer on the project. While Straub testified that he told Lampert and Fulton to inform the crew of the proper overtime arrangements, the unexplained failure of either Fulton or Lampert to testify at the hearing, as noted by the ALJ, suggests that their testimony may not have been supportive of Straub's contentions. Finally, crew members were paid for a month and a half after beginning their employment on the project with checks issued by Tri-State at the rate of overtime customarily paid by Tri-State. Such a fact surely could have buttressed the employees' belief that they had a right to be paid overtime in accordance with Tri-State's rate of compensation.

■ Respondent next argues that the Board erred in finding that the employees were laid off by Tri-State for refusing to abandon a grievance concerning their overtime pay. Respondent claims that the decision to replace the crew on the project was implemented before respondent had any knowledge of the employees' intention not to sign the statement and was based on the poor performance of the crew on previous jobsites and the corresponding need to have his company's higher-rated crews working on the more difficult work sites. Additionally, respondent maintains that the crew would have been laid off on August 26th regardless of the overtime dispute. *See NLRB v. Valley Plaza, Inc.*, 715 F.2d 237, 241 (6th Cir.1983) (employer may show as an affirmative defense to that the discharge would have occurred even in the absence of the protected activity).

Once again, we find substantial evidence in the record to support the ALJ's determination. The ALJ found that at the August 25th meeting between Straub and the crew, Straub implied to crew members that if they did not sign the statements admitting their satisfaction with the overtime arrangements, then they would lose their jobs. The layoffs occurred only one day after the August 25th meeting and immediately following some of the employees' refusal to sign their statements. Moreover, one member of the crew who signed his statement was treated differently than the other four crew members who failed to sign their statements. Straub's proffered explanation for the discharge is belied by the fact that Lampert told the employees that they were being discharged because of a lack of work. Even Lampert's explanation for the discharge is called into question as the ALJ found that work remained on the site following the layoffs. As to respondent's claim that the company discharged the Fulton crew in order to have its higher-rated crew on the project, we find, as the ALJ did, no evidence of a formal rating system for evaluating crew performance.

## B. Board Order of August 26, 1985

■ Respondent argues that the Board abused its discretion in issuing its August 26th order correcting its March 18th order to include the word "allegedly" in the parenthetical statement made in footnote two of the March 18th order. Respondent claims that there is no evidence in the record to support the Board's position that the correction was motivated by "inadvertence," as stated in the August 26th order. Rather, respondent suggests that the impetus for the correction was petitioner's motion for modification which requested that the Board leave to the compliance stage of the proceeding the determination of when offers of reinstatement were made to the Tri-State crew. Since petitioner failed to file exceptions to the ALJ's finding that workers were recalled in July of 1983 and did not file a timely motion for modification, respondent argues that the Board lacked the authority under its rules and regulations to modify, by its August 26th order, the finding that workers were recalled in July of 1983.

We need not decide whether the Board lacked the authority to correct its earlier

order, as even if we were to agree with respondent and hold that the Board was foreclosed from correcting its finding that workers were recalled by Tri-State in July of 1983, the issue of when reinstatement was offered to the aggrieved employees is not entitled to *collateral estoppel,* as respondent suggests, and may be relitigated.

The issue before the ALJ in the instant case was whether respondent was guilty of committing unfair labor practices. A finding that workers were recalled in July of 1983 was not essential to support either the ALJ's decision or the Board's order.[3] As such, the issue may be relitigated in the compliance stage of this proceeding, when the issue of damages will be addressed. *See NLRB v. Master Slack and/or Master Trouser Corporation,* 773 F.2d 77, 81–82 (6th Cir.1985) (ALJ finding that backpay should continue past a plant shutdown was *dicta,* thus not precluding relitigation in a supplemental proceeding).

Having found no error by the Board, this court affirms the decision of the Board and enforces the order.

---

**3.** We suspect that our holding was not unanticipated by respondent, as we note that at the hearing before the ALJ, respondent objected on the grounds of relevancy to any testimony by Jim Murad, one of the laid off crew members, on the issue of the actual date of the recall.